## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PETROPOULOS and | ) | |
| LORI PETROPOULOS, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 19-cv-03206 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————————— | ) | |

## MEMORANDUM OPINION AND ORDER

One day, Plaintiffs Christopher and Lori Petropoulos opened their mail and discovered that a violent, incarcerated felon had sent them a copy of their personal documents. The inmate apparently obtained their private documents from, of all sources, the City of Chicago. The felon sent the City a FOIA request, but instead of sending him material about his criminal case (as requested), the City gave him a copy of the Petropouloses' confidential information.

It's a mystery to everyone how the City got its hands on their documents in the first place. And it's unknown why the City sent the family's private documents to a violent inmate. But someway, somehow, the City sent the wrong documents to the wrong person.

Alarmed by the disclosure, the Petropouloses now claim that the City violated their constitutional right to privacy. They also advance an assortment of claims under Illinois law, including negligence, negligent supervision, and negligent infliction of emotional distress. The City of Chicago moves to dismiss the constitutional claim under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978), and asks that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. The motion is granted.

## Background

An inmate sent a FOIA request to the City of Chicago for documents about his arrest and conviction. *See* Cplt. ¶¶ 2, 9. He is no ordinary inmate. He is a "known violent felon," and is a member of a street gang called the "Maniac Latin Disciples." *See* Cplt. ¶¶ 8, 12. He is currently incarcerated for murder. *Id.* at ¶ 8. Simply put, he's "dangerous." *Id.* at ¶ 2.

The inmate's FOIA request set off a chain of events that culminated in unsettling mail sent to the Petropoulos family. The City didn't send the inmate the right documents. Instead, the City sent him a cache of highly personal documents about the Petropouloses. *Id.* at ¶ 10. The documents contained "significant private and personal information" that you wouldn't want a violent inmate to know about you: "names, home addresses, phone numbers, signatures, and financial information." *Id.* at ¶ 8.

It's unclear how, exactly, the City wound up with their confidential documents. The Petropouloses don't even live in Chicago. *Id.* at ¶ 1. The complaint doesn't offer any theories. Suffice it to say that their documents "should not have even been in the Defendant's possession." *Id.* at ¶ 3. And it is a mystery why the City sent their documents to the inmate, instead of sending him documents about his criminal case. Their personal information was "wholly unrelated to the FOIA request." *Id.* at ¶ 25. The complaint simply says that it was a "mistake." *Id.* at ¶ 10.

The inmate eventually received the wrong documents. Instead of throwing them away, or returning them to the City, the felon decided to send the material to the Petropoulos family. *Id.* at ¶¶ 2, 11. The complaint doesn't explain why he sent them there. There's no allegation that he threatened the family, or tried to use their personal information against them somehow. The package wasn't overtly threatening, except in the sense that every unexpected piece of mail

about you from an incarcerated murderer would seem threatening. Maybe he was simply returning documents that didn't belong to him. The uncertain motive compounds the mystery.

Whatever the reason, the inmate mailed the Petropoulos family a copy of their personal documents, and created great alarm when they opened the mail. *Id.* at ¶ 11. The Petropouloses now live in a "state of compromised safety," and "have suffered and continue to suffer tremendous emotional distress." *Id.* at ¶¶ 13, 15. The City has "inexcusabl[y] placed private individuals in a state of fear and turmoil over the knowledge that a murderer is in possession of their private information." *Id.* at ¶ 4.

The Petropouloses blame the City for divulging their private information to a convicted felon, and for failing to inform them of the disclosure after the fact. *See id.* at ¶¶ 11–12. They allege that the City "failed to properly train and supervise its employees" to "provid[e] precise and accurate responses to [FOIA] requests." *See id.* at ¶ 14. They further allege that "the City, the Police Department, and the Police Department's Record Manager / FOIA Officer obviously do not have practices in place to protect this sort of private information."[1] *Id.*

The Petropouloses allege that the City violated their "substantive due process rights to privacy, safety, and security" under the Fourth and Fourteenth Amendments. *Id.* at ¶ 5. They also bring three Illinois state law claims: negligence, negligent supervision, and negligent infliction of emotional distress. *See id.* at ¶¶ 23–51.

---

[1] While Plaintiffs mention the Police Department and the Police Department's Record Manager / FOIA officer in their Complaint, they only name the City of Chicago as a defendant. Count I is a section 1983 claim against the City. *See* Cplt., at ¶¶ 23–31. So is Count II. *Id.* at ¶¶ 32–34. The main difference appears to be that Count II refers to an unidentified FOIA officer and alleges that the City was sued "**INDIVIDUALLY**." *Id.* (all caps and bold in original). Perhaps Plaintiffs intended to sue the FOIA officer. But if so, they did not include him or her as a defendant. Count II is against "Defendant CITY OF CHICAGO" only. *Id.* (all caps in original). So as it stands, Count II is duplicative of Count I, and is therefore dismissed.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. *McReynolds v . Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). When considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive, a complaint must provide the defendant with fair notice of the basis of the claim, and must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Analysis**

The Petropouloses claim that the City violated their constitutional right to privacy by sending their private documents to an incarcerated felon. *See* Cplt. ¶¶ 23–34. The City, in turn, moved to dismiss the claim under *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978). The gist of the argument is that the complaint fails to allege that the City itself maintained an unlawful policy, practice, or custom.

*Monell* limits constitutional claims against municipalities. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. A plaintiff must allege that the local government *itself* caused or participated in the deprivation of his rights. *See id.*; *see also Foy v. City of Chicago*, 2016 WL

2770880, at *7 (N.D. Ill. 2016). Put differently, a local government is not liable for an injury inflicted solely by its employees or agents. *See Monell*, 436 U.S. at 694.

A local government like the City of Chicago may be liable for a violation of section 1983 in only one of three situations:

> (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a "wide-spread practice" that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with "final decision policymaking authority."

*Johnson v. Cook Cty.*, 526 Fed. Appx. 692, 695 (7th Cir. 2013) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005)); *see also Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). Gaps in an express policy, or the absence of a policy, can give rise to a claim. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). A plaintiff also must allege causation, meaning that the policy or custom was the "moving force" behind the constitutional violation. *See Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

The Petropouloses do not need to point to an express policy that directed City employees to mishandle FOIA requests. But alleging a *Monell* claim based on the *absence* of a policy brings its own challenges. When a plaintiff relies on a gap in policies to support his claims, "he must provide enough evidence . . . to permit an inference that the [entity] has *chosen* an impermissible way of operating." *Calhoun v. Ramsey*, 408 F.3d 375, 381 (7th Cir. 2005) (emphasis added). And "a plaintiff pursuing a widespread practice claim generally must allege more than one, and sometimes more than three, instances of misconduct." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018) (citing *Thomas*, 604 F.3d at 303).

Here, the Petropouloses allege that the City "obviously do[es] not have practices and policies in place," and that it "failed to properly train and supervise its employees." Cplt. ¶ 14; *see also id.* at ¶ 17 ("Defendant failed to have in place necessary oversight, practices, and policies that would prevent such personal and private information from being disclosed in violation of the law."); *id.* at ¶ 26 ("Defendant failed to adequately train and supervise employees' activities on a sensitive topic in a manner that would eliminate or prevent such privacy violations."). They might be alleging that there is a gap in the City's policy about how it handles FOIA requests. Or maybe they're alleging that there is a widespread practice that constitutes a custom or usage. Perhaps they're alleging both.

Either way, the pleading requirements are the same. It is "more confusing than useful to distinguish between claims about express policies that fail to address certain issues, and claims about widespread practices that are not tethered to a particular written policy." *See Calhoun*, 408 F.3d at 380. "Both in the 'widespread practice' implicit policy cases and in the cases attacking gaps in express policies, what is needed is evidence that there is a true municipal policy at issue, not a random event." *Id.*

A plaintiff must allege more than a chance slip-up by an individual employee. *See Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018) (citing *Thomas*, 604 F.3d at 303). And while there is no heightened pleading standard for *Monell* claims, there isn't a lower standard, either. As always, conclusory allegations and formulaic recitations of the elements of a claim aren't enough. *See Estate of Sims ex rel. Sims*, 506 F.3d at 514; *Iqbal*, 556 U.S. at 678–79; *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Raw conclusions are not entitled to a presumption of truth. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 680–81).

The Seventh Circuit has explained that *Iqbal* and *Twombly* require plaintiffs to plead "some specific facts" to support the claims. *McCauley*, 671 F.3d at 616 (quoting *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009)). After putting aside conclusory allegations, the Court must determine whether the remaining facts "plausibly suggest an entitlement to relief." *Id.* (citing *Iqbal*, 556 U.S. at 680–81).

The Petropouloses do not satisfy these pleading standards. The complaint rests entirely on their own personal experiences. They allege no other examples of the City releasing the wrong information to the wrong recipients. After describing what happened to the Plaintiffs, the complaint merely recites the generic elements of a *Monell* claim, alleging that the City "obviously" does not have its house in order. *See* Cplt. ¶ 14.

Plaintiffs allege that the City "failed to properly train and supervise its employees." *See* Cplt. ¶ 14. They allege that the City "obviously do[es] not have practices and policies in place to protect the Plaintiffs' personal and private information from being disclosed." *Id.* at ¶ 14. They also claim that the City "failed to have in place necessary oversight, practices, and policies that would prevent such personal and private information from being disclosed." *Id.* at ¶ 17. Raw conclusions about inadequate policies and practices don't cut it, but that's all the complaint has to offer. *See Thomas*, 604 F.3d at 303.

The Petropouloses argue that allegations based on their own experience – a single instance of misdirected mail – is enough to allege a policy. They contend that the "[c]ase law indicates that for purposes of this motion, the Plaintiffs need not provide any other examples of the Defendant's practice to allege a *Monell* claim." Pls.' Resp. to Mot. to Dismiss, at 2 (Dckt. No. 19). But when it comes to citing case law, they come up empty. *See id.* They rely on the

7

Seventh Circuit's admonition that courts should not apply a "heightened pleading standard" to *Monell* claims. *Id.* (citing *White v. City of Chicago*, 829 F. 3d 837, 844 (7th Cir. 2016)).

That's true. But applying established Seventh Circuit law does not subject the complaint to a "heightened pleading standard." The problem is that the complaint doesn't satisfy run-of-the-mill pleading standards. No one is raising the bar; Plaintiffs just can't clear the standard 12(b)(6) height.

The Seventh Circuit has not adopted any bright-line rules defining "custom or practice," but it has found that "it must be more than one instance." *See Thomas*, 604 F.3d at 303 (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988)). Indeed, even three instances may not be sufficient in some cases, as the Seventh Circuit has found that an allegation of three incidents did not amount to a "persistent and widespread practice." *See id.* (citing *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). A random event does not give rise to a *Monell* claim. *Id.*

Requiring a number of examples is a way of enforcing the bar against vicarious liability. A plaintiff could blame almost any slip-up by a municipal employee on a lack of a policy, or insufficient training or supervision. If that allegation were enough to state a claim, the exception would swallow the rule, and *Monell* wouldn't provide much of a barrier. It would be open season on claims against municipalities.

It is difficult to sufficiently allege a *Monell* claim by pointing to only one example, particularly when that example is the plaintiff's own experience. *See Thomas*, 604 F.3d at 303. "Courts in this District regularly dismiss *Monell* claims where the plaintiff has failed to allege instances other than that from which he suffered." *Carmona v. City of Chicago*, 2018 WL 306664, at *2 (N.D. Ill. 2018); *see also Arita v. Wexford Health Sources, Inc.*, 2016 WL 6432578, at *2 (N.D. Ill. 2016) (rejecting *Monell* claim because plaintiff's own experiences were

the only allegations of misconduct); *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *4 (N.D. Ill. 2016) (same); *Winchester v. Marketti*, 2012 WL 2076375, at *4 (N.D. Ill. 2012) ("What is fatal to the *Monell* claims, however, is that Plaintiff makes no attempt to plead a pattern of similar constitutional violations with any degree of factual specificity."); *Jones v. Feinerman*, 2011 WL 4501405, at *6 (N.D. Ill. 2011) (dismissing a *Monell* claim because plaintiff alleged deliberate indifference that was limited "only to him").

One data point doesn't show much of a trend. While it is not *impossible* for a single plaintiff to establish a widespread practice or custom with his own experience, it is "necessarily more difficult" to do so. *See Grieveson*, 538 F.3d at 774; *Carmona*, 2018 WL 306664, at *2. A plaintiff must allege that "there is a true municipal policy at issue, not a random event." *Grieveson*, 538 F.3d at 774. The Petropouloses don't allege that other families received the same type of startling mail. Instead, they allege only their own experience. That isolated incident – as alarming as it may have been – is not enough to support an inference of a custom or practice.

For example, in *Grieveson*, an inmate alleged that prison officials provided him his entire prescription bottle (as opposed to dispensing individual doses) on four occasions, which caused other prisoners to physically attack him to steal his medication. *See Grieveson v. Anderson*, 538 F.3d 763, 773–74 (7th Cir. 2008). The Seventh Circuit granted summary judgment against Grieveson on his deliberate indifference claim, finding that he did not establish a widespread custom. *Id.* at 774. Grieveson's own experiences – four incidents – were insufficient for the Court to infer "that the county itself approved, acquiesced, or encouraged the disbursement of entire prescriptions at once." *Id.* (citing *Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir. 1986)).

Even if the complaint alleged other examples of the City sending the wrong documents to the wrong place, it might not have been enough to state a claim. That is, a pattern of bungling FOIA requests might not give rise to a *constitutional* claim. To succeed, Plaintiffs would need to allege a pattern of violating constitutional rights by sending non-public documents to the wrong recipients. Suppose, for the sake of argument, that the City routinely botches FOIA requests by sending *publicly available* information to the wrong recipients. Sending public documents to the wrong person might violate FOIA, but it wouldn't violate any right to privacy (because, again, the documents are public anyway). To support a claim, Plaintiffs would have to allege that there is a custom or practice of violating constitutional rights by messing up FOIA requests. And here, the Petropouloses have made no such allegation.

Plaintiffs' conclusory allegations about the City's failure to train suffer the same weaknesses as the allegations about a policy. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). "This pattern, or recurring string of related unconstitutional conduct, is necessary because it establishes that policymakers know or should have known that their employees' training was deficient." *Winchester v. Marketti*, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012).

Failure to train claims are difficult to make. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of the persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). Courts therefore reject generic allegations about a failure to train. *See Carmona*, 2018 WL 306664, at *3

(collecting cases); *see also Foy*, 2016 WL 2770880, at *9 (finding that the plaintiff failed to state a *Monell* claim because the allegations were boilerplate, plaintiff failed to articulate what specific training was lacking, and plaintiff failed to support an inference that the lack of training caused the alleged constitutional violation).

The Petropouloses have failed to allege a claim for failure to train. They do not allege what sort of training the City failed to provide, nor do they allege how a failure to train caused their injuries. Generic allegations – based on a single experience – are not enough. *See Foy*, 2016 WL 2770880, at *9; *see also Hardy v. Wexford Health Sources, Inc.*, 2015 WL 1593597, at *14 (N.D. Ill Apr. 2, 2015) ("Absent allegations of what training or staffing was lacking and how that deficiency impacted Hardy's health or that of his fellow inmates, Hardy has failed to state a claim for deliberate indifference due to a failure to train and a failure to provide adequate staffing."); *Maglaya v. Kumiga*, 2015 WL 4624884, at *5 (N.D. Ill. 2015). They merely allege that there wasn't enough training. That allegation is too generic to support an inference that the City itself caused their injuries. *See Foy,* 2016 WL 2770880, at *9.

Plus, without any allegations about the training failures, it is difficult to envision what sort of training the City should have put in place. Training that the right documents need to go in the right envelopes? Training that they should be extra careful when mailing things to prisoners? Training about how to handle confidential information? Plaintiffs themselves allege that there was a "mistake," so it's unclear how additional training would have done much good. *See* Cplt. ¶ 10. The complaint doesn't offer much of an explanation about how the City itself – as opposed to one of its employees – fell down on the job.

The complaint fails to satisfy the pleading standards for a claim against the City under *Monell*, so the constitutional claims (Counts I & II) are dismissed without prejudice. With the

dismissal of Plaintiffs' constitutional claims against the City, no federal claim survives. The remainder of Plaintiffs' claims – negligence, negligent supervision, and negligent infliction of emotional distress – are claims under Illinois state law. The City urges that the Court should, therefore, decline to exercise jurisdiction over the remaining state law claims in Counts III, IV, and V. The Court agrees.

The supplemental jurisdiction statute provides that the district court "may decline to exercise supplemental jurisdiction" over state law claims if the Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *RWJ Management Co., Inc. v. BP Prods. North America, Inc.*, 672 F.3d 476, 489 (7th Cir. 2012). While the Court's decision is discretionary, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). While the presumption is rebuttable, "'it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *RWJ Management Co., Inc. v. BP Prods. North America, Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).

The Seventh Circuit has identified certain circumstances that may impact the presumption. Examples include a statute of limitations issue, or a situation in which the Court has already committed substantial judicial resources to the action, or a case with easy-to-resolve state-law claims. *See id.* (citing *Sharp Electronics Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009)). That's not this case. The Court follows the presumption that it will relinquish federal jurisdiction over the state-law claims absent a federal hook, and thus declines to exercise jurisdiction over these supplemental state law claims. This case is at the pleading

stage, so there is little concern about wasted judicial resources. And the parties disagree about an issue of state law. That issue is best settled by an Illinois state court. Counts III through V are dismissed without prejudice.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss [13] is granted. Plaintiffs have leave to amend by April 30, 2020.

Date:  March 24, 2020

Steven C. Seeger
United States District Judge